1   XAVIER BECERRA
    Attorney General of California
2   ROBERT BYRNE
    Senior Assistant Attorney General
3   GARY E. TAVETIAN (CA Bar No. 117135)
    Supervising Deputy Attorney General
4   JOSHUA M. CAPLAN (CA Bar No. 245469)
    JOHN SASAKI (CA Bar No. 202161)
5   Deputy Attorneys General
    State Bar No. 245469
6     600 West Broadway, Suite 1800
      San Diego, CA 92186-5266
7     Telephone: (619) 738-9303
      Facsimile: (619) 645-2271
8     E-mail:  Gary.Tavetian@doj.ca.gov
      E-mail:  Josh.Caplan@doj.ca.gov
9     E-mail:  John.Sasaki@doj.ca.gov

10  *Attorneys for Plaintiff the People of the State of California*
    *ex rel. the California Air Resources Board and Xavier Becerra,*
11  *Attorney General of the State of California*

12                  IN THE UNITED STATES DISTRICT COURT

13                      FOR THE DISTRICT OF COLUMBIA

14

15

16

17  PEOPLE OF THE STATE OF CALIFORNIA          CASE NO.1:20-cv-2565
    *EX REL. THE CALIFORNIA AIR RESOURCES*
18  *BOARD AND XAVIER BECERRA, ATTORNEY*        CIVIL ENFORCEMENT COMPLAINT
    *GENERAL OF THE STATE OF CALIFORNIA,*       FOR PERMANENT INJUNCTION, CIVIL
19                                              PENALTIES, AND OTHER LEGAL AND
                                   Plaintiffs,  EQUITABLE RELIEF
20
            v.
21
    DAIMLER AG, AND MERCEDES-BENZ
22  USA, LLC,
23                                 Defendants.

24

25          The People of the State of California, by and through the California Air Resources Board

26  ("CARB") and Xavier Becerra, Attorney General of the State of California, represented by the

27  Office of the California Attorney General ("Plaintiff" or "California"), bring this civil law

28

                                               1
                          COMPLAINT – CALIFORNIA v. DAIMLER AG, ET AL.

enforcement action against Daimler AG ("Daimler") and Mercedes-Benz USA, LLC ("MB USA") (collectively, "Defendants"). This action is brought under California laws and regulations relating to the control of harmful air pollutants, California Business and Professions Code § 17200, and under the Clean Air Act ("CAA"), 42 U.S.C. § 7604(a)(1), and the California State Implementation Plan approved by the United States Environmental Protection Agency ("EPA") and codified at 40 C.F.R. part 52, subpart F–California, and 81 Fed. Reg. 39424-01. Plaintiff alleges the following on information and belief:

## INTRODUCTION

1.      Beginning in late 2008 and continuing through 2017, Defendants sold or caused to be sold model year 2009 through 2016 light-duty trucks and passenger vehicles with 2.1- and 3.0-liter diesel engine's ("Subject Vehicles") in California that did not comply with California and federal laws and regulations governing vehicle emissions and certifications.[1]  Defendants sold or caused to be sold approximately 36,946 Subject Vehicles in California.

2.      To combat dangerous levels of air pollution, California has regulated pollutants for many years and was the first state to regulate automobile tailpipe emissions.  California's air-quality regulations preceded the federal CAA, and the CAA preserves California's authority to set and enforce its own air quality standards.  To legally import, offer for sale, or sell vehicles in California, a manufacturer must submit a vehicle certification application and obtain an Executive Order from CARB certifying the vehicles for sale.  This regulatory scheme is designed to ensure that vehicles sold in California comply with the state's strict emissions standards, including standards limiting emissions of nitrogen oxides ("NOx").  NOx is a key contributor to ambient ozone and fine particulate matter pollution in California, both of which have a detrimental effect on public health and the environment.

3.      Defendants' certification applications for the Subject Vehicles failed to disclose at least thirty (30) software-based Auxiliary Emission Control Devices ("AECDs") that significantly affect the emissions control systems.  The Subject Vehicles therefore do not match

---

[1] The Subject Vehicles are further identified in paragraph 51.

COMPLAINT – CALIFORNIA v. DAIMLER AG, ET AL.

the configurations specified in the certification applications submitted to CARB. Based on these inaccurate and incomplete disclosures, Defendants obtained Executive Orders allowing them to sell the non-compliant Subject Vehicles in California.

4.    Further, thirteen (13) or more of the undisclosed AECDs serve as defeat devices in violation of California law, either operating alone or in combination with each other.

5.    These undisclosed AECDs and defeat devices, alone or in combination, cause the vehicles to emit NOx at dramatically elevated levels during certain real world driving conditions in comparison to their performance during regulated emissions tests. Defendants' actions violated various California laws concerning vehicle certification and emissions.

6.    Defendants' actions also violated California's on-board diagnostic regulations. The on-board diagnostic system ensures a vehicle's emission control system operates properly for the life of the vehicle, and helps repair technicians diagnose and fix problems with the system.

7.    Through this action, the People of the State of California, by and through the California Air Resources Board, represented by the Office of the California Attorney General, seek: (1) an order preliminarily and permanently enjoining Defendants from violating California emission control statutes and regulations; and (2) an order requiring Defendants to remedy their violations of California law; and (3) civil penalties along with other appropriate relief.

**JURISDICTION**

8.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims under 42 U.S.C. § 7604(a)(1). The Court has supplemental jurisdiction over all other claims under 28 U.S.C. § 1367 because the other claims arise from or form part of the same case or controversy under Article III of the United States Constitution.

9.    The Court has personal jurisdiction over each of the Defendants under District of Columbia Code § 13-423. Defendants, either individually, in concert, or both, directly or indirectly interacted with CARB throughout the Executive Order application process for the Subject Vehicles. Defendants, either individually, in concert, or both, intentionally imported, marketed, sold (or caused to be sold), or leased (or caused to be leased) the Subject Vehicles in

3

California and in this District. The Court's exercise of jurisdiction over each of the Defendants is consistent with due process.

## VENUE

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to California's claims occurred in this District.  Alternatively, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to the Court's personal jurisdiction in this District.

## PARTIES

I.     PLAINTIFF

11.     The California Air Resources Board ("CARB") is a public agency of the State of California within the California Environmental Protection Agency.  Among other duties and responsibilities, CARB is charged with controlling motor vehicle emissions to systematically address the serious air pollution problems they cause.  To that end, California Health and Safety Code §§ 43101 and 43104, among other statutory provisions, direct CARB to adopt and implement emission standards for new motor vehicles, and test procedures and any other procedures necessary to determine whether the vehicles or engines comply with those emissions standards.  California Health and Safety Code § 43017 authorizes CARB to bring a civil action to enjoin any violation of Division 26, Part 5 (§§ 43000-44299.91, Vehicular Air Pollution Control) of the California Health and Safety Code or any CARB rule or regulation (and expressly excepts CARB from any requirement that it allege inadequate remedy at law, irreparable damage, or loss to obtain the requested injunction).  California Health and Safety Code §§ 43016, 43211, and 43212 subject any person who violates emissions standards, test procedures, and other CARB regulations to civil penalties.[2]  California Health and Safety Code §§ 43150-43154 provide CARB with the authority to ensure that only motor vehicles that meet CARB's emissions

---

[2] Sections 43016, 43211, and 43212 were amended, effective January 1, 2017, primarily to modify the penalty amounts and structure. See 2016 Cal. Legis. Serv. Ch. 604 (A.B. 1685, "AIR POLLUTION—MOTOR VEHICLES—FINES AND PENALTIES").  The previous versions of the statutes apply to violations occurring before January 1, 2017.

4

regulations, and that are certified by CARB, are sold and operated in California. CARB is empowered to obtain civil penalties and injunctive relief for violations of these provisions.[3] This action is thus brought by the California Attorney General on behalf of CARB and in the name of the People of the State of California.

12.     California and its political subdivisions, including CARB, are "persons" under 42 U.S.C. § 7602(e) and § 7604(a) and are thus authorized and have standing to bring suit under the CAA. In addition, the general CAA prohibition against attempts by a State (or political subdivision) to adopt or enforce its own standards related to the control of emissions from new motor vehicles does not apply to California insofar as California has obtained a waiver from the federal government to adopt and enforce its own emission standards that meet or exceed federal standards . 42 U.S.C. §§ 7507, 7543(b).

13.     Under the Constitution of the State of California and based on specific independent statutory authority, Xavier Becerra, Attorney General of the State of California ("California Attorney General"), is generally authorized to bring suit and obtain relief on behalf of the People of the State of California. Cal. Const. art. V, § 13.

14.     The California Attorney General is further authorized to act in the name of the People of the State of California by California Business and Professions Code § 17204 to obtain injunctive relief to halt violations of, and enforce compliance with, California Business and Professions Code § 17200 *et seq.*, and is authorized by California Business and Professions Code § 17206 to obtain civil penalties of up to $2,500 for each violation of §§ 17200. The California Attorney General's claims are separate and independent from the claims asserted on behalf of CARB.

---

[3] Section 43154, which authorizes civil penalties for violations of these statutes, was amended, effective January 1, 2017, primarily to modify the penalty amounts and structure. See 2016 Cal. Legis. Serv. Ch. 604 (A.B. 1685, "AIR POLLUTION—MOTOR VEHICLES—FINES AND PENALTIES"). The prior version of the statute applies to violations occurring before January 1, 2017.

## II.  DEFENDANTS

15.    Defendant Daimler Aktiengesellschaft ("Daimler") is a German corporation formed under the laws of Germany, headquartered in Stuttgart, Baden-Württemberg, Germany. Daimler is an international auto group that designs, manufactures, imports, distributes, markets, sells, and leases vehicles and vehicle components under various brands, including Mercedes-Maybach, Mercedes-Benz, Mercedes-AMG, Smart, Freightliner, Mitsubishi Fuso, Thomas Built Buses, Western Star, BharatBenz, and Setra.  Daimler maintains a California Business Center in Long Beach, California, a California Vehicle Preparation Center in Long Beach, California and a Parts Distribution Center in Fontana, California.  Daimler, either directly or through its predecessors and agents, has transacted and continues to transact business throughout the United States and California, including in this judicial district.  Daimler, either directly or through its predecessors and agents, arranged for sale or delivery of its diesel vehicles under the brand Mercedes-Benz, among others, to the United States for sale throughout California.  Daimler, either directly or through its predecessors and agents, designed the Bluetec engine systems incorporated into the Subject Vehicles and performed emissions tests on the Subject Vehicles. Daimler employees regularly communicated with employees of defendant Mercedes-Benz USA LLC regarding the engine used in the Subject Vehicles and regarding the Subject Vehicles. Daimler, either directly or through its predecessors and agents, has regularly submitted information to CARB, including applications for Executive Orders.  Daimler has also regularly participated in meetings with CARB, including in person, via telephone, or through videoconferencing technology, including in connection with applications for Executive Orders. Daimler has also regularly corresponded or otherwise communicated with CARB, including in connection with applications for Executive Orders.

16.    Mercedes-Benz USA, LLC ("MB USA") is a limited liability company formed under the laws of the State of Delaware.  MB USA acts as the sole distributor for Mercedes-Benz vehicles throughout California, purchasing those vehicles from Daimler for sale throughout California.  MB USA, along with and through its subsidiaries, designs, engineers, manufactures, imports, distributes, sells, and leases vehicles under various brands, including Mercedes-Benz.

6

COMPLAINT – CALIFORNIA v. DAIMLER AG, ET AL.

MB USA has its headquarters and principal place of business in Sandy Springs, Georgia. MB USA, either directly or through its subsidiaries, predecessors, and agents, arranged for sale or delivery of its diesel vehicles under the brand Mercedes-Benz, among others, to the United States for sale throughout California. MB USA, either directly or through its subsidiaries, predecessors, and agents: (a) designed the Bluetec diesel engine systems incorporated into the Subject Vehicles; (b) has regularly submitted information to CARB, including applications for Executive Orders; (c) has regularly participated in meetings with CARB, including in person, via telephone, or through videoconferencing technology, including in connection with applications for Executive Orders; and (d) has regularly corresponded or otherwise communicated with CARB, including in connection with applications for Executive Orders.

17.     At all relevant times, each Defendant acted individually and jointly with every other named Defendant in committing the acts alleged in this Complaint.

18.     At all relevant times, each Defendant acted: (a) as a principal; (b) under express or implied agency; and/or (c) with actual or ostensible authority to perform the acts alleged in this Complaint on behalf of every other named Defendant.

19.     At all relevant times, some or all Defendants acted as the agent of the others, and all Defendants acted within the scope of their agency if acting as an agent of another.

20.     At all relevant times, each Defendant knew or should have known that the other Defendant was engaging in or planned to engage in the violations of law alleged in this Complaint. Despite knowing that the other Defendant was engaging in such unlawful conduct (or despite the fact that they should have known that the other Defendants were engaging in unlawful conduct), each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendant in the unlawful conduct.

21.     Defendants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law alleged in

1    this Complaint.  The conspiracy, common enterprise, and common course of conduct continue to

2    the present.

3         22.    The Defendants sold the Subject Vehicles to California Mercedes-Benz

4    authorized dealers. In turn, these dealers resold the Subject Vehicles to California customers for

5    use, registration, and resale.  In some instances, these dealers leased the Subject Vehicles to

6    California customers for use in California.

7         23.    The violations of law alleged in this Complaint occurred throughout the State of

8    California and the United States, including throughout this District.

9                    **BACKGROUND AND FACTUAL ALLEGATIONS**

10   **I.    VEHICLE EMISSIONS POSE A SIGNIFICANT AIR POLLUTION CHALLENGE IN**

11   **CALIFORNIA**

12        24.    California has a long history of severe air pollution.  In simplest terms, California

13   has tens of millions of residents, many of whom travel by automobile, and they are often

14   concentrated in large, urban areas surrounded by mountains.  This topography traps vehicle

15   emissions containing harmful air pollutants, and the pollutants in the emissions further react with

16   other pollutants and California's abundant sunlight to create ozone (smog), creating a serious air

17   quality problem that is harmful to human health, property, and the environment.  NOx emissions

18   in California are a key contributor to ambient ozone and fine particulate matter pollution, which

19   are associated with premature deaths, increased hospitalizations, emergency room visits due to

20   exacerbation of chronic heart and lung diseases, and other serious health effects.  A major

21   contributor to NOx emissions is combustion from diesel engines and vehicles, such as the Subject

22   Vehicles at issue in this Complaint.

23        25.    The emission of air pollutants from motor vehicles is a primary cause of air

24   pollution in many parts of California, and the control and elimination of those air pollutants is of

25   prime importance for the protection and preservation of the public health, property, and the

26   environment.

27        26.    California has long been at the forefront of researching, investigating, monitoring,

28   and regulating sources of air pollution, including automobile tailpipe emissions.  Beginning in the

                                    8

late 1950s and early 1960s, California enacted the nation's first vehicle emission standards and regulations. In 1971, California enacted the country's first automobile NOx standards.

27.     CARB was formed in 1967 and is charged with setting and implementing vehicle emissions standards in California. California regulated vehicle emissions before the United States Congress passed the CAA in 1970, and that statute provides that California is the only state permitted to obtain a waiver from the federal government to adopt and enforce its own emission standards that meet or exceed federal standards. 42 U.S.C. § 7543(b). California obtained such a waiver and retained its authority to adopt and enforce its own emission standards, including those at issue in this action.

28.     Despite California's efforts to combat air pollution over the past half century, many regions of California continue to suffer from some of the worst air quality in the nation. For example, the Central Valley and Los Angeles air basins remain out of attainment with federal health-based ambient air quality standards that target NOx, particulate matter, and ozone, among other pollutants. These pollutants negatively affect public health and welfare across a broad demographic spectrum. California has gone to great lengths to combat air pollution, and it has devoted significant state resources over decades to the effort.

II.    CALIFORNIA'S REGULATION OF VEHICLE EMISSIONS

29.     Under its unique, retained authority, California has continued to set strict emissions standards and test procedures for vehicles imported or sold in California. California has a special interest in assuring that only those new motor vehicles that meet the state's stringent emission standards and test procedures are sold, used, or registered in the state.

30.     California Health and Safety Code § 43102 specifies that no new motor vehicle or engine can be certified by CARB unless it meets the emission standards adopted by CARB under the test procedures adopted by CARB. Section 43106 requires that each new motor vehicle or engine required to meet the emission standards shall be, in all material respects, substantially the same in construction as the test motor vehicle or engine, as the case may be, that has been certified by CARB. Section 43150 declares that "only those new motor vehicles and new motor

9

vehicle engines which meet this state's stringent emission standards and test procedures, and which have been certified pursuant to this chapter, are used or registered in this state." The Subject Vehicles were certified to either the Low Emission Vehicle II ("LEV II") standard or the Low Emission Vehicle III ("LEV III") standard.[4] The relevant "LEV II" standards are set forth in 13 C.C.R. § 1961, the relevant "LEV III" standards are set forth in 13 C.C.R. § 1961.2, and test procedures for the Subject Vehicles also are incorporated by reference in 13 C.C.R. §§ 1961 and 1961.2.

31.     For model year 2001 through 2014 vehicles, 13 C.C.R. § 1961(d) incorporates by reference the certification requirements and test procedures in the "California 2001 through 2014 Model Criteria Pollutant Exhaust Emission Standards and Test Procedures and 2009 through 2016 Model Greenhouse Gas Exhaust Emission Standards and Test Procedures for Passenger Cars, Light-Duty Trucks and Medium-Duty Vehicles" ("2001-2014 Test Procedures"). The 2001-2014 Test Procedures require manufacturers to, among other things, list all AECDs installed on their vehicles, including a justification for each AECD, the parameters the AECDs sense and control, a detailed justification of each AECD that results in a reduction in effectiveness of the emission control system, and a rationale for why the AECD is not a defeat device. The 2001-2014 Test Procedures incorporate 40 C.F.R. §§ 86.1809-01, 86.1809-10, and 86.1809-12, which prohibit the use of a defeat device in any new light-duty vehicle and certain other vehicles.

32.     For model year 2015 and later vehicles, 13 C.C.R. § 1961.2(d) incorporates by reference the certification requirements and test procedures in the "California 2015 and Subsequent Model Criteria Pollutant Exhaust Emission Standards and Test Procedures and 2017 and Subsequent Model Greenhouse Gas Exhaust Emission Standards and Test Procedures for Passenger Cars, Light-Duty Trucks, and Medium-Duty Vehicles" ("2015 Test Procedures"). The 2015 Test Procedures require manufacturers to, among other things, list all AECDs installed on their vehicles, including a justification for each AECD, and a rationale for why the AECD is not a

---

[4] All Subject Vehicles were certified to the "LEV II" standard, except for the 4-cylinder Sprinters (MY 2014-2016) and the GLK 250 Bluetec 4MATIC (MY 2013-2015), which were certified to the "LEV III" standard.

10

defeat device. The 2015 Test Procedures incorporate 40 C.F.R. §§ 86.1809-01, 86.1809-10, and 86.1809-12, which prohibit the use of a defeat device in any new light duty vehicle and certain other vehicles.

33. California law requires that each make and model year of vehicle comply with California's emissions standards and be certified by CARB before being imported, delivered, purchased, acquired, received, offered, rented, leased, or sold for use, registration, or resale in California.

34. California Health and Safety Code §§ 43151, 43152, and 43153 generally prohibit importing, delivering, selling, or leasing new motor vehicles for use, registration, or resale in California, or attempting or assisting in any of the above such acts, unless such motor vehicles have been certified by CARB and comply with California's emissions standards and other requirements.

35. CARB administers a certification program designed to prevent the introduction of new motor vehicles into California that do not satisfy applicable emission standards. Under this program, CARB reviews applications submitted for new motor vehicles and certifies them by issuing Executive Orders.

36. To obtain an Executive Order, a manufacturer must submit an application to CARB for each model year and for each test group of vehicles that it intends to import, deliver, purchase, rent, lease, acquire, receive, or sell in California. Manufacturers are prohibited from taking any of these actions unless such motor vehicles have been certified through an Executive Order issued by CARB.

37. To be certified, a vehicle manufacturer must demonstrate that each vehicle's exhaust and evaporative emission control systems are durable and will comply with the applicable emission and evaporative emission standards for the vehicle's useful life. The manufacturer demonstrates this through durability and certification testing of sample vehicles. This certification process is comprehensive—CARB evaluates compliance with numerous

11

requirements in addition to tail-pipe emissions, including regulations for on-board diagnostic, anti-tampering, labeling, and warranties.

38.     California's certification requirements and test procedures require, among other things, that an automobile manufacturer disclose in its certification applications all AECDs present in the vehicle. As defined in 40 C.F.R. § 86.1803-01 and incorporated into California law, an AECD is "any element of design that senses temperature, vehicle speed, engine RPM, transmission gear, manifold vacuum, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system." All AECDs must be disclosed so that CARB may properly evaluate them for, among other things, their effect on emissions, their purpose, and their effect on vehicle components and durability.

39.     California's certification requirements and test procedures also prohibit the use of defeat devices. As set out in 40 C.F.R. § 86.1803-01 and incorporated into California law, a defeat device is an AECD that reduces the effectiveness of the emission control system under conditions that may reasonably be expected to be encountered during normal vehicle operation and use and does not meet one of four exceptions set forth in the regulations. Vehicles equipped with defeat devices will not be certified.

40.     California's certification requirements and test procedures require an on-board diagnostic system that meets regulatory requirements, is designed to test that the emissions control system is working properly, and, when a malfunction is detected, alerts owners via a "check engine" light of needed service and informs mechanics of the cause of the malfunction. In California, most newer cars (model year 2000 and newer) no longer require tailpipe testing during smog checks; these cars are now simply connected to an on-board diagnostic scanner to detect malfunctions. Because of this reliance on on-board diagnostic scans to detect problems, if the on-board diagnostic system is not operating properly (or was not designed to operate properly), the vehicles may pass smog checks even though they possess significant deficiencies.

41.     The on-board diagnostic regulations permit CARB to certify vehicles even though the vehicles do not fully comply with one or more of the requirements set forth in the on-board

12

diagnostic regulations, unless the deficiency would make the vehicle subject to an ordered recall. See 13 C.C.R. § 1968.2(k). As set out in the regulations, among other things, CARB considers the extent to which the on-board diagnostic requirements are satisfied, and the manufacturer must demonstrate a good faith effort to meet the on-board diagnostic requirements in full and come into compliance as expeditiously as possible. The regulations require manufacturers to pay fines on a per deficiency, per vehicle basis for each deficiency in excess of two granted by CARB at the time of certification.

**III. DEFENDANTS INCORPORATED AECDS AND DEFEAT DEVICES INTO THE SUBJECT VEHICLES AND FAILED TO DISCLOSE THEM TO CARB**

**A. Design and Manufacture of the Subject Vehicles**

42. While diesel engines have the potential to offer certain benefits over comparably sized gasoline engines—for example, better fuel economy and increased power—the combustion process leads to greater production of NOx. Automobile manufacturers use various strategies to reduce NOx tailpipe emissions in diesel engine vehicles.

43. The Subject Vehicles incorporate two primary NOx reduction strategies:

a. **Exhaust Gas Recirculation ("EGR").** Through this process, a portion of the exhaust gas (which has lower oxygen content) is fed back into the combustion chamber, lowering the combustion temperature inside the cylinder. This reduces the rate of NOx formation, but it can also increase the level of particulate matter produced by the combustion.

b. **Selective Catalytic Reduction ("SCR")**. SCR uses an aqueous urea solution, also known as diesel exhaust fluid ("DEF"), as a reducing agent. The fluid is stored in a separate tank in the vehicle that requires periodic refilling. The DEF reacts in the exhaust to produce ammonia and carbon dioxide. The NOx reacts with ammonia to yield nitrogen and water. SCR is an example of an after-treatment system, which treats exhaust gas after combustion but before release into the environment from the tailpipe.

44. Like most modern vehicles, the Subject Vehicles also contain an electronic engine control unit ("ECU") and transmission control unit ("TCU"). The ECU processes numerous data inputs and coordinates and controls the engine and emissions systems. ECUs are

13

essentially computers, sometimes described as the "brains" of the vehicle. The software that runs on the ECU includes numerous variables that can be set by the manufacturer through a process known as calibration. These calibrated variables include thresholds and enabling and disabling conditions, many of which alter the way that the engine, emissions control system, and on-board diagnostic system operate. The collection of all of the settings for each of the software variables is known as a calibration.

45.     ECU software that senses inputs like ambient temperature, motive speed, engine revolutions per minute, transmission gear, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system is an AECD. The ECU software in the Subject Vehicles incorporates various AECDs. As described below, Defendants did not disclose some of these AECDs to CARB at all, and even when Defendants disclosed the existence of the AECDs or certain information about them, Defendants did not disclose them fully and accurately.

46.     During regulated emission testing cycles, the ECU software and calibrations installed on the Subject Vehicles (including AECDs) operate the engine and emission control systems—including the EGR and SCR processes—in such a way that emissions appear to be compliant with CARB's standards.

47.     In conditions outside of the regulated emission testing cycles, however, the ECU software and calibrations installed on the Subject Vehicles (including AECDs) operate in such a way that the effectiveness of the emission control system is reduced—that is, the engine and after-treatment systems operate in a way that produces increased NOx emissions. The extent of the increase depends on various factors, including the particular Subject Vehicle and the driving conditions.

48.     Defendants purchased the ECUs and ECU software for the subject vehicles from Robert Bosch GmbH and/or Robert Bosch LLC (collectively, "Bosch").

COMPLAINT – CALIFORNIA v. DAIMLER AG, ET AL.

49. Defendants coordinated with Bosch regarding ECU software changes for the Subject Vehicles. Defendants also worked with Bosch on calibrating the Subject Vehicles, including calibrating the on-board diagnostic system.

50. Defendants, and each of them, manufactured, calibrated, imported, marketed, sold, and leased the Subject Vehicles.

51. The Subject Vehicles are identified in the table below:

| Model Year | Model | Test Group |
|---|---|---|
| 2009 | GL 320 Bluetec | 9MBXT03.0U2B |
| 2009 | ML 320 Bluetec/ R 320 Bluetec | 9MBXT03.0U2A |
| 2010 | Sprinter 3500 CDI | AMBXT03.0HD2 |
| 2010 | Sprinter 2500 CDI/ Sprinter 3500 CDI | AMBXT03.0HD1 |
| 2010 | GL 350 Bluetec | AMBXT03.0U2B |
| 2010 | ML 350 Bluetec/ R 350 Bluetec | AMBXT03.0U2A |
| 2011 | R 350 Bluetec 4MATIC/ ML 350 Bluetec 4MATIC | BMBXT03.0U2A |
| 2011 | Sprinter 2500 CDI/ Sprinter 3500 CDI | BMBXT03.0HD1 |
| 2011 | Sprinter 3500 CDI | BMBXT03.0HD2 |
| 2011 | GL 350 Bluetec 4MATIC | BMBXT03.0U2B |
| 2011 | E 350 Bluetec | BMBXV03.0U2B |
| 2012 | E 350 Bluetec | CMBXV03.0U2B |
| 2012 | ML 350 Bluetec 4MATIC | CMBXT03.0U2A |
| 2012 | S 350 Bluetec 4MATIC | CMBXV03.0U2A |
| 2012 | GL 350 Bluetec 4MATIC/ R 350 Bluetec 4MATIC | CMBXT03.0U2B |
| 2012 | Sprinter 3500 CDI/ | CMBXT03.0HD2 |
| 2012 | Sprinter 2500 CDI/ Sprinter 3500 CDI | CMBXT03.0HD1 |

COMPLAINT – CALIFORNIA v. DAIMLER AG, ET AL.

| 2013 | Sprinter 3500 CDI | DMBXT03.0HD2 |
|---|---|---|
| 2013 | Sprinter 2500 CDI/ Sprinter 3500 CDI | DMBXT03.0HD1 |
| 2013 | S 350 Bluetec 4MATIC | DMBXV03.0U2A |
| 2013 | GL 350 Bluetec 4MATIC/ ML 350 Bluetec 4MATIC | DMBXT03.0U2A |
| 2013 | GLK 250 Bluetec 4MATIC | DMBXT02.2U2A |
| 2013 | E 350 Bluetec | DMBXV03.0U2B |
| 2014 | Sprinter 3500 CDI/ Sprinter 2500 CDI | EMBXT02.2HD1 |
| 2014 | Sprinter 3500 CDI | EMBXT02.2HD2 |
| 2014 | Sprinter 3500 CDI/ Sprinter 2500 CDI | EMBXT03.0HD1 |
| 2014 | Sprinter 3500 CDI | EMBXT03.0HD2 |
| 2014 | GL 350 Bluetec 4MATIC/ ML 350 Bluetec 4MATIC | EMBXT03.0U2A |
| 2014 | E 250 Bluetec/ E 250 Bluetec 4MATIC/ GLK 250 Bluetec 4MATIC | EMBXJ02.2U2A |
| 2015 | Sprinter 3500 CDI Cargo Van/ Sprinter 3500 CDI RV | FMBXT02.1HD2 |
| 2015 | Sprinter 2500 CDI Cargo Van/ Sprinter 2500 CDI Coach/ Sprinter 3500 CDI Cargo Van | FMBXT02.1HD1 |
| 2015 | E 250 Bluetec/ E 250 Bluetec 4MATIC/ GLK 250 Bluetec 4MATIC | FMBXJ02.1U2A |
| 2015 | ML 250 Bluetec 4MATIC/ ML 250 Bluetec 4MATIC Base | FMBXT02.1U2A |
| 2015 | GL 350 Bluetec 4MATIC/ ML 350 Bluetec 4MATIC | FMBXT03.0U2A |
| 2015 | Sprinter 3500 CDI/ Sprinter 2500 CDI | FMBXT03.0HD1 |
| 2015 | Sprinter 3500 CD | FMBXT03.0HD2 |
| 2015 | Sprinter 2500 CDI 4x4 | FMBXT03.0HD3 |
| 2015 | Sprinter 3500 CDI 4x4 | FMBXT03.0HD4 |
| 2016 | Sprinter 3500 CDI | GMBXT02.1HD4 |

COMPLAINT – CALIFORNIA v. DAIMLER AG, ET AL.

| 2016 | Sprinter 2500 CDI/ Sprinter 3500 CDI | GMBXT02.1HD3 |
|---|---|---|
| 2016 | Sprinter 3500 CDI | GMBXT02.1HD2 |
| 2016 | Sprinter 2500 CDI/ Sprinter 3500 CDI | GMBXT02.1HD1 |
| 2016 | E 250 Bluetec/ E 250 Bluetec 4MATIC | GMBXV02.1U2B |
| 2016 | GLE 300D 4MATIC | GMBXT02.1U2A |
| 2016 | GL 350 Bluetec 4 MATIC/ GLE 350 D 4 MATIC/ GLE 350 D 4MATIC (coupe) | GMBXT03.0U2A |
| 2016 | Sprinter 3500 CDI | GMBXT03.0HD2 |
| 2016 | Sprinter 2500 CDI/ Sprinter 3500 CDI | GMBXT03.0HD1 |
| 2016 | Sprinter 3500 CDI 4x4 | GMBXT03.0HD4 |
| 2016 | Sprinter 2500 CDI 4x4 | GMBXT03.0HD3 |

**B.    The Applications for Executive Orders Submitted to CARB Failed to Disclose AECDs**

52.    To apply for Executive Orders from CARB to sell the Subject Vehicles in California, Defendants submitted applications and supporting materials to CARB and communicated with CARB regarding the Subject Vehicles.

53.    Daimler and MB USA employees or managers were involved with creating or approving the submissions to CARB by Daimler and MB USA.

54.    Among other things, the application materials submitted by Defendants identified certain AECDs and provided some information on those AECDs.  The following AECDs, however, were either not disclosed to CARB, or, if the AECDs or parts of the AECDs were disclosed, they were not disclosed fully and accurately:

    a.  AECD No. 1 (alternative SCR dosing modes used depending on specific parameters that recognize test cycles);

    b.  AECD No. 2 (vehicle placed in pre-control mode when certain SCR temperature or integrated NOx parameters are met);

COMPLAINT – CALIFORNIA v. DAIMLER AG, ET AL.

c. AECD No. 3 (multiple restart strategy used to determine if vehicle is on test cycle);

d. AECD No. 4 (reduction of DEF dosing when vehicle operation correlates with real world driving);

e. AECD No. 5 (suppression of portions of SCR monitor during FTP test cycle);

f. AECD No. 6 (accelerates intrusive on-board diagnostic monitors during UDC test cycle);

g. AECD No. 7 (suppresses intrusive on-board diagnostic monitors during HWY, US06, and FTP test cycles);

h. AECD No. 8 (advances DEF injection timing if certain parameters are met);

i. AECD No. 9 (defaults to full DEF dosing and full ammonia slip while vehicle is on FTP Test cycle);

j. AECD No. 10 (forces higher DEF dosing after engine start if engine off time coordinates with test procedure);

k. AECD No. 11 (DEF dosing increased when vehicle on test cycle);

l. AECD No. 12 (artificial increase of NOx conversion efficiency when vehicle on test cycle);

m. AECD No. 13 (targets higher SCR conversion efficiency under certain on-cycle SCR temperature and exhaust gas mass flow conditions);

n. AECD No. 14 (reduces target efficiency rate as SCR catalyst ages);

o. AECD No. 15 (reduction of ammonia storage and SCR-related efficiency with vehicle age);

p. AECD No. 16 (intrusive action to prevent completion of SCR monitoring);

q. AECD No. 17 (Ammonia storage lowered from catalyst following drop in SCR efficiency during fill mode);

r. AECD No. 18 (EGR Shut-off for component protection);

COMPLAINT – CALIFORNIA v. DAIMLER AG, ET AL.

s.  AECD No. 19 (changes the start of fuel injection timing based on the engine turbocharge boost);

t.  AECD No. 20 (reduction in rail pressure depending on ambient pressure);

u.  AECD No. 21 (ammonia drained from SCR catalyst immediately before regeneration);

v.  AECD No. 22 (Release of pilot injections depending on coolant temperature and transmission gear);

w.  AECD No. 23 (Pilot injection quantities modulation dependent on coolant temperature)'

x.  AECD No. 24 (Pilot injection pauses modulation dependent on coolant temperature and ambient pressure);

y.  AECD No. 25 (Close post injection shut-off dependent on coolant temperature and ambient pressure);

z.  AECD No. 26 (Air path adaption);

aa. AECD No. 27 (EGR shut-off at high load/low engine speed);

bb. AECD No. 28 (Variable swirl modulation dependent on coolant temperature and ambient pressure);

cc. AECD No. 29 (Boost pressure reduction/limitation dependent on intake air temperature, ambient pressure and air volume flow); and

dd. AECD No. 30 (Compressor surge prevention).

55.    These 30 AECDs—operating alone or in combination with each other—detrimentally affect the emission control system of the Subject Vehicles.

56.    One or more of the AECDs, including AECD No. 4 (Bit 15) and AECD No. 13 (Bit 2), qualify as "defeat devices" in violation of California law, either operating alone or in combination with each other: they reduce the effectiveness of the Subject Vehicles' emission control systems and cause the vehicles to emit increased NOx under certain real world driving conditions other than those encountered during regulatory emission tests.

19

57. Defendants did not disclose AECD No. 1, which was installed in all Subject Vehicles, in their applications for certification submitted to CARB for all Subject Vehicles.

58. Defendants did not disclose AECD No. 2 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 2 was installed: MY 2009 ML320 Bluetec; MY 2009 GL320 Bluetec; MY 2010 ML350 Bluetec MY 2012 GL350 Bluetec; MY 2013 GL350 Bluetec 4MATIC; MY 2014 GLK250 Bluetec 4MATIC; MY 2015 Sprinter 3500 CDI Cargo Van/ Sprinter 3500 CDI RV; MY 2015 Sprinter 2500 CDI Cargo Van/ Sprinter 2500 CDI Coach/ Sprinter 3500 CDI Cargo Van; MY 2015 Sprinter 3500 CDI/ Sprinter 2500 CDI; MY 2015 Sprinter 3500 CD; MY 2015 Sprinter 2500 CDI 4x4; MY 2015 Sprinter 3500 CDI 4x4; MY 2015 GL350 Bluetec 4MATIC; MY 2015 GLK250 Bluetec 4MATIC; MY 2015 E250 Bluetec; MY 2015 ML250 Bluetec 4MATIC; MY 2016 Sprinter 2500 CDI; MY 2016 Sprinter 3500 CDI 4x4; MY 2016 Sprinter 2500 CDI 4x4; and MY 2016 Sprinter 3500 CDI.

59. Defendants did not disclose AECD No. 3 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 3 was installed: MY 2010 ML350 Bluetec; MY 2010 GL350 Bluetec; MY 2011 E350 Bluetec; MY 2011 GL350 Bluetec 4MATIC; MY 2012 GL350 Bluetec 4MATIC; MY 2013 GL350 Bluetec 4MATIC; MY 2014 GL350 Bluetec 4MATIC; MY 2014 GLK250 Bluetec 4MATIC; MY 2015 GLK250 Bluetec 4MATIC; MY 2015 E250 Bluetec; MY 2015 ML250 Bluetec 4MATIC; MY 2015 Sprinter 2500 CDI and 3500 CDI; and MY 2015 GL350 Bluetec 4MATIC.

60. Defendants did not disclose AECD No. 4 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 4 was installed: MY 2009 GL320 Bluetec; MY 2009 ML320 Bluetec; MY 2010 ML350 Bluetec; MY 2011 E350 Bluetec; MY 2012 GL350 Bluetec 4MATIC; MY 2013 GL350 Bluetec 4MATIC; MY 2014 GLK250 Bluetec 4MATIC; MY 2015 GL350 Bluetec 4MATIC; MY 2015 GLK250 Bluetec 4MATIC; MY 2015 E250 Bluetec; MY 2015 ML250 Bluetec 4MATIC; MY 2015 Sprinter 2500 CDI; MY 2015 GLK250 Bluetec 4MATIC; MY 2015 GL350 Bluetec 4MATIC; and MY 2015 E250 Bluetec.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

61.     Defendants did not disclose AECD No. 5 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 5 was installed: MY 2009 ML320 Bluetec; MY 2009 GL320 Bluetec; MY 2010 ML350 Bluetec; MY 2011 E350 Bluetec; MY 2012 GL350 Bluetec 4MATIC; MY 2013 GL350 Bluetec 4MATIC; MY 2013 GLK250 Bluetec 4MATIC; MY 2014 GLK250 Bluetec 4MATIC; MY 2015 GLK250 Bluetec 4MATIC; MY 2015 E250 Bluetec; MY 2015 ML250 Bluetec 4MATIC; MY 2015 GL350 Bluetec 4MATIC; MY 2015 Sprinter 2500 CDI and 3500 CDI; MY 2015 GLK250 Bluetec 4MATIC; and MY 2016 Sprinter 2500 CDI and 3500 CDI.

62.     Defendants did not disclose AECD No. 6 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 6 was installed: MY 2012 GL350 Bluetec 4MATIC; MY 2013 GL350 Bluetec 4MATIC; MY 2013 GLK250 Bluetec 4MATIC; MY 2014 GLK250 Bluetec 4MATIC; MY 2015 GLK250 Bluetec 4MATIC; MY 2015 E250 Bluetec; MY 2015 ML250 Bluetec 4MATIC; MY 2015 GL350 Bluetec 4MATIC; and MY 2015 Sprinter 2500 CDI and 3500 CDI.

63.     Defendants did not disclose AECD No. 7 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 7 was installed: MY 2013 GLK250 Bluetec 4MATIC; MY 2014 GLK250 Bluetec 4MATIC; MY 2015 GLK250 Bluetec 4MATIC; MY 2015 ML250 Bluetec 4MATIC; MY 2015 GL350 Bluetec 4MATIC; and MY 2015 E250 Bluetec 4MATIC[5].

64.     Defendants did not disclose AECD No. 8 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 8 was installed: MY 2010 Sprinter 2500 CDI and 3500 CDI; MY 2011 Sprinter 2500 CDI and 3500 CDI; MY 2012 Sprinter 2500 CDI and 3500 CDI; MY 2013 Sprinter 2500 CDI and 3500 CDI; MY 2013 GL350 Bluetec 4MATIC; MY 2014 Sprinter 2500 CDI and 3500 CDI; MY 2014 GL350 Bluetec 4MATIC; MY 2015 GL350 Bluetec 4MATIC; MY 2015 Sprinter 2500 CDI and 3500 CDI; and MY 2016 Sprinter 2500 CDI and 3500 CDI.

---

[5] AECD No. 7 is present but inactive in MY 2015 E250 Bluetec 4MATIC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

65.     Defendants did not disclose AECD No. 9, which was installed in all Subject Vehicles, in their applications for certification submitted to CARB for all Subject Vehicles.

66.     Defendants did not disclose AECD No. 10 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 10 was installed: MY 2015 GL350 Bluetec 4MATIC.

67.     Defendants did not disclose AECD No. 11 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 11 was installed: MY 2015 GLK250 Bluetec 4MATIC.

68.     Defendants did not disclose AECD No. 12 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 12 was installed: MY 2015 GLK250 Bluetec 4MATIC.

69.     Defendants did not disclose AECD No. 13 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 13 was installed: MY 2015 GL350 Bluetec 4MATIC.

70.     Defendants did not disclose AECD No. 14 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 14 was installed: MY 2009 GL320 Bluetec; MY 2009 R320 Bluetec; MY 2010 GL350 Bluetec; MY 2011 GL350 Bluetec 4MATIC; MY 2012 GL350 Bluetec 4MATIC; and MY 2012 R350 Bluetec 4MATIC.

71.     Defendants did not disclose AECD No. 15 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 15 was installed: MY 2013 E350 Bluetec; MY 2013 Sprinter 2500 CDI; and MY 2013 Sprinter 3500 CDI.

72.     Defendants did not disclose AECD No. 16 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 16 was installed: MY 2016 Sprinter 2500 CDI; and MY 2016 Sprinter 3500 CDI.

73.     Defendants did not disclose AECD No. 17, which was installed in all Subject Vehicles, in their applications for certification submitted to CARB for all Subject Vehicles.

74.     Defendants did not disclose AECD No. 18, which was installed in all Subject Vehicles, in their applications for certification submitted to CARB for all Subject Vehicles.

75.     Defendants did not disclose AECD No. 19 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 19 was installed: MY 2010 Sprinter 2500 CDI; MY 2010 Sprinter 3500 CDI; MY 2011 Sprinter 2500 CDI; MY 2011 Sprinter 3500 CDI; MY 2012 Sprinter 2500 CDI; MY 2012 Sprinter 3500 CDI; MY 2013 Sprinter 2500 CDI; MY 2013 Sprinter 3500 CDI; MY 2014 Sprinter 2500 CDI; MY 2014 Sprinter 3500 CDI; MY 2015 Sprinter 2500 CDI Cargo Van; MY 2015 Sprinter 2500 CDI Coach; MY 2015 Sprinter 3500 CDI Cargo Van; MY 2015 Sprinter 3500 CDI; MY 2015 Sprinter 3500 CDI 4x4; MY 2015 Sprinter 3500 CDI 4x4; MY 2016 Sprinter 3500 CDI; MY 2016 Sprinter 2500 CDI; MY 2016 Sprinter 3500 CDI 4x4; and MY 2016 Sprinter 2500 CDI 4x4.

76.     Defendants did not disclose AECD No. 20 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 20 was installed: MY 2010 Sprinter 2500 CDI; MY 2010 Sprinter 3500 CDI; MY 2011 Sprinter 2500 CDI; MY 2011 Sprinter 3500 CDI; MY 2012 Sprinter 2500 CDI; MY 2012 Sprinter 3500 CDI; MY 2013 Sprinter 2500 CDI; MY 2013 Sprinter 3500 CDI; MY 2014 Sprinter 2500 CDI; MY 2014 Sprinter 3500 CDI; MY 2015 Sprinter 2500 CDI Cargo Van; MY 2015 Sprinter 2500 CDI Coach; MY 2015 Sprinter 3500 CDI Cargo Van; MY 2015 Sprinter 3500 CDI; MY 2015 Sprinter 3500 CDI 4x4; MY 2015 Sprinter 3500 CDI 4x4; MY 2016 Sprinter 3500 CDI; MY 2016 Sprinter 2500 CDI; MY 2016 Sprinter 3500 CDI 4x4; and MY 2016 Sprinter 2500 CDI 4x4.

77.     Defendants did not disclose AECD No. 21 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 21 was installed: MY 2013 GL350 Bluetec 4MATIC; MY 2014 GLK 250 Bluetec 4MATIC; MY 2015 GL350 Bluetec 4MATIC; MY 2015 GLK 250 Bluetec 4MATIC; MY 2015 E250 Bluetec; and MY 2015 ML250 Bluetec 4MATIC.

78.     Defendants did not disclose AECD No. 22 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 22 was installed: MY

2010 Sprinter 2500 CDI; MY 2010 Sprinter 3500 CDI; MY 2011 Sprinter 2500 CDI; MY 2011 Sprinter 3500 CDI; MY 2012 Sprinter 2500 CDI; MY 2012 Sprinter 3500 CDI; MY 2013 Sprinter 2500 CDI; MY 2013 Sprinter 3500 CDI; MY 2014 Sprinter 2500 CDI; MY 2014 Sprinter 3500 CDI; MY 2015 Sprinter 2500 CDI Cargo Van; MY 2015 Sprinter 2500 CDI Coach; MY 2015 Sprinter 3500 CDI Cargo Van; MY 2015 Sprinter 3500 CDI; MY 2015 Sprinter 3500 CDI 4x4; MY 2015 Sprinter 3500 CDI 4x4; MY 2016 Sprinter 3500 CDI; MY 2016 Sprinter 2500 CDI; MY 2016 Sprinter 3500 CDI 4x4; and MY 2016 Sprinter 2500 CDI 4x4.

79.     Defendants did not disclose AECD No. 23 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 23 was installed: MY 2010 Sprinter 2500 CDI; MY 2010 Sprinter 3500 CDI; MY 2011 Sprinter 2500 CDI; MY 2011 Sprinter 3500 CDI; MY 2012 Sprinter 2500 CDI; MY 2012 Sprinter 3500 CDI; MY 2013 Sprinter 2500 CDI; MY 2013 Sprinter 3500 CDI; MY 2014 Sprinter 2500 CDI; MY 2014 Sprinter 3500 CDI; MY 2015 Sprinter 2500 CDI Cargo Van; MY 2015 Sprinter 2500 CDI Coach; MY 2015 Sprinter 3500 CDI Cargo Van; MY 2015 Sprinter 3500 CDI; MY 2015 Sprinter 3500 CDI 4x4; MY 2015 Sprinter 3500 CDI 4x4; MY 2016 Sprinter 3500 CDI; MY 2016 Sprinter 2500 CDI; MY 2016 Sprinter 3500 CDI 4x4; and MY 2016 Sprinter 2500 CDI 4x4.

80.     Defendants did not disclose AECD No. 24 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 24 was installed: MY 2010 Sprinter 2500 CDI; MY 2010 Sprinter 3500 CDI; MY 2011 Sprinter 2500 CDI; MY 2011 Sprinter 3500 CDI; MY 2012 Sprinter 2500 CDI; MY 2012 Sprinter 3500 CDI; MY 2013 Sprinter 2500 CDI; MY 2013 Sprinter 3500 CDI; MY 2014 Sprinter 2500 CDI; MY 2014 Sprinter 3500 CDI; MY 2015 Sprinter 2500 CDI Cargo Van; MY 2015 Sprinter 2500 CDI Coach; MY 2015 Sprinter 3500 CDI Cargo Van; MY 2015 Sprinter 3500 CDI; MY 2015 Sprinter 3500 CDI 4x4; MY 2015 Sprinter 3500 CDI 4x4; MY 2016 Sprinter 3500 CDI; MY 2016 Sprinter 2500 CDI; MY 2016 Sprinter 3500 CDI 4x4; and MY 2016 Sprinter 2500 CDI 4x4.

81.     Defendants did not disclose AECD No. 25 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 25 was installed: MY

24

2010 Sprinter 2500 CDI; MY 2010 Sprinter 3500 CDI; MY 2011 Sprinter 2500 CDI; MY 2011 Sprinter 3500 CDI; MY 2012 Sprinter 2500 CDI; MY 2012 Sprinter 3500 CDI; MY 2013 Sprinter 2500 CDI; MY 2013 Sprinter 3500 CDI; MY 2014 Sprinter 2500 CDI; MY 2014 Sprinter 3500 CDI; MY 2015 Sprinter 2500 CDI Cargo Van; MY 2015 Sprinter 2500 CDI Coach; MY 2015 Sprinter 3500 CDI Cargo Van; MY 2015 Sprinter 3500 CDI; MY 2015 Sprinter 3500 CDI 4x4; MY 2015 Sprinter 3500 CDI 4x4; MY 2016 Sprinter 3500 CDI; MY 2016 Sprinter 2500 CDI; MY 2016 Sprinter 3500 CDI 4x4; and MY 2016 Sprinter 2500 CDI 4x4.

82.     Defendants did not disclose AECD No. 26 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 26 was installed: MY 2010 Sprinter 2500 CDI; MY 2010 Sprinter 3500 CDI; MY 2011 Sprinter 2500 CDI; MY 2011 Sprinter 3500 CDI; MY 2012 Sprinter 2500 CDI; MY 2012 Sprinter 3500 CDI; MY 2013 Sprinter 2500 CDI; MY 2013 Sprinter 3500 CDI; MY 2014 Sprinter 2500 CDI; MY 2014 Sprinter 3500 CDI; MY 2015 Sprinter 2500 CDI Cargo Van; MY 2015 Sprinter 2500 CDI Coach; MY 2015 Sprinter 3500 CDI Cargo Van; MY 2015 Sprinter 3500 CDI; MY 2015 Sprinter 3500 CDI 4x4; MY 2015 Sprinter 3500 CDI 4x4; MY 2016 Sprinter 3500 CDI; MY 2016 Sprinter 2500 CDI; MY 2016 Sprinter 3500 CDI 4x4; and MY 2016 Sprinter 2500 CDI 4x4.

83.     Defendants did not disclose AECD No. 27 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 27 was installed: MY 2010 Sprinter 2500 CDI; MY 2010 Sprinter 3500 CDI; MY 2011 Sprinter 2500 CDI; MY 2011 Sprinter 3500 CDI; MY 2012 Sprinter 2500 CDI; MY 2012 Sprinter 3500 CDI; MY 2013 Sprinter 2500 CDI; MY 2013 Sprinter 3500 CDI; MY 2014 Sprinter 2500 CDI; MY 2014 Sprinter 3500 CDI; MY 2015 Sprinter 2500 CDI Cargo Van; MY 2015 Sprinter 2500 CDI Coach; MY 2015 Sprinter 3500 CDI Cargo Van; MY 2015 Sprinter 3500 CDI; MY 2015 Sprinter 3500 CDI 4x4; MY 2015 Sprinter 3500 CDI 4x4; MY 2016 Sprinter 3500 CDI; MY 2016 Sprinter 2500 CDI; MY 2016 Sprinter 3500 CDI 4x4; and MY 2016 Sprinter 2500 CDI 4x4.

84.     Defendants did not disclose AECD No. 28 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 28 was installed:

MY 2010 Sprinter 2500 CDI; MY 2010 Sprinter 3500 CDI; MY 2011 Sprinter 2500 CDI; MY 2011 Sprinter 3500 CDI; MY 2012 Sprinter 2500 CDI; MY 2012 Sprinter 3500 CDI; MY 2013 Sprinter 2500 CDI; MY 2013 Sprinter 3500 CDI; MY 2014 Sprinter 2500 CDI; MY 2014 Sprinter 3500 CDI; MY 2015 Sprinter 2500 CDI Cargo Van; MY 2015 Sprinter 2500 CDI Coach; MY 2015 Sprinter 3500 CDI Cargo Van; MY 2015 Sprinter 3500 CDI; MY 2015 Sprinter 3500 CDI 4x4; MY 2015 Sprinter 3500 CDI 4x4; MY 2016 Sprinter 3500 CDI; MY 2016 Sprinter 2500 CDI; MY 2016 Sprinter 3500 CDI 4x4; and MY 2016 Sprinter 2500 CDI 4x4.

85.    Defendants did not disclose AECD No. 29 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 29 was installed: MY 2010 Sprinter 2500 CDI; MY 2010 Sprinter 3500 CDI; MY 2011 Sprinter 2500 CDI; MY 2011 Sprinter 3500 CDI; MY 2012 Sprinter 2500 CDI; MY 2012 Sprinter 3500 CDI; MY 2013 Sprinter 2500 CDI; MY 2013 Sprinter 3500 CDI; MY 2014 Sprinter 2500 CDI; MY 2014 Sprinter 3500 CDI; MY 2015 Sprinter 2500 CDI Cargo Van; MY 2015 Sprinter 2500 CDI Coach; MY 2015 Sprinter 3500 CDI Cargo Van; MY 2015 Sprinter 3500 CDI; MY 2015 Sprinter 3500 CDI 4x4; MY 2015 Sprinter 3500 CDI 4x4; MY 2016 Sprinter 3500 CDI; MY 2016 Sprinter 2500 CDI; MY 2016 Sprinter 3500 CDI 4x4; and MY 2016 Sprinter 2500 CDI 4x4.

86.    Defendants did not disclose AECD No. 30 in their applications for certification submitted to CARB for the following Subject Vehicles in which AECD No. 30 was installed: MY 2010 Sprinter 2500 CDI; MY 2010 Sprinter 3500 CDI; MY 2011 Sprinter 2500 CDI; MY 2011 Sprinter 3500 CDI; MY 2012 Sprinter 2500 CDI; MY 2012 Sprinter 3500 CDI; MY 2013 Sprinter 2500 CDI; MY 2013 Sprinter 3500 CDI; MY 2014 Sprinter 2500 CDI; MY 2014 Sprinter 3500 CDI; MY 2015 Sprinter 2500 CDI Cargo Van; MY 2015 Sprinter 2500 CDI Coach; MY 2015 Sprinter 3500 CDI Cargo Van; MY 2015 Sprinter 3500 CDI; MY 2015 Sprinter 3500 CDI 4x4; MY 2015 Sprinter 3500 CDI 4x4; MY 2016 Sprinter 3500 CDI; MY 2016 Sprinter 2500 CDI; MY 2016 Sprinter 3500 CDI 4x4; and MY 2016 Sprinter 2500 CDI 4x4.

87.    Each of the respective applications for certification submitted to CARB for the Subject Vehicles contained material false statements and omissions related to these AECDs.

88.    Each of the respective applications for certification submitted to CARB for the Subject Vehicles contained material false statements and omissions related to the vehicles' on-board diagnostic systems.

89.    The emissions compliance data and on-board diagnostic durability demonstration data submitted to CARB by Defendants in connection with each application for certification contained material false statements and omissions, and the emissions testing was not completed according to CARB requirements, because, among other reasons, the data were generated using undisclosed AECDs and defeat devices and were not representative of the Subject Vehicles' performance under normal operating conditions.

90.    Part of the CARB certification process involves signing a "statement of compliance" with applicable standards for each certification application. Defendants knew, or should have known, that their statements of compliance in each of their applications for certification were false or misleading regarding their compliance with California and federal emissions laws and regulations, because, among other reasons, each statement of compliance related to a certification application that failed to disclose AECDs and defeat devices, on-board diagnostic system non-conformities, and emissions standard failures.

91.    Defendants' materially false statements and omissions submitted to CARB allowed the Subject Vehicles to be certified for sale and lease in California despite their non-compliance with California law.

92.    CARB relied on the accuracy of Defendants' statements and the information presented in connection with their applications for certification of the Subject Vehicles when CARB issued Executive Orders certifying the Subject Vehicles for sale and lease in California.

93.    The Subject Vehicles as actually manufactured and sold or leased in California did not conform in all material respects with the vehicle descriptions in Defendants' applications for certification.

27

## IV. EXCESS POLLUTION FROM THE SUBJECT VEHICLES HARMS THE ENVIRONMENT AND PUBLIC HEALTH

94.     The Subject Vehicles have emitted and continue to emit NOx emissions several times the CARB-compliant levels, depending on vehicle type, vehicle loads, and driving conditions (e.g., city or highway).

95.     The excess NOx emissions from the Subject Vehicles equipped with undisclosed AECDs and defeat devices have caused and are causing significant damage to the State of California, including to the health of its residents and its natural resources.

96.     NOx is a highly reactive gas that is a major contributor to two other air pollutants, particulate matter and ozone. NOx emissions, and the particulate matter and ozone pollution to which NOx contributes, are among the most regulated air pollutants in the US and California due to the large effect these pollutants have on public health and the environment.

97.     Diesel particulate matter has scientifically demonstrated negative effects on public health and welfare and has been identified as a toxic air contaminant. A strong and broad body of evidence links inhalation of particulate matter pollution, of which diesel particulate matter is part, with premature death, respiratory illnesses, and heart disease.

98.     In the short term, NOx and particulate matter have been found by scientific studies in California and elsewhere to reduce lung function and exacerbate the symptoms of asthmatics. Long term, chronic conditions such as reduced lung function, asthma, and chronic obstructive pulmonary disease are among the many adverse effects of these air pollutants. Particulate matter can also impair visibility and damage vegetation.

99.     Ozone is the prime precursor to smog. EPA analyses have found that short term exposure to ozone "induced (or [was] associated with) statistically significant declines in lung function." Such short term exposure results in increases in asthma medication use in children, emergency room visits, and hospital admissions for respiratory conditions, and is a likely cause of a range of other health and mortality issues.

100.    An EPA analysis of ozone in 2013 found that "strong evidence" exists that ozone concentrations impair many native plants and trees by injuring foliage, decreasing growth and

biomass accumulation in annual, perennial, and woody plants (including agronomic crops, annuals, shrubs, grasses, and trees), and decreasing the yield and/or nutritive quality in a large number of agronomic and forage crops.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Clean Air Act of 1970, 42 U.S.C. § 7604)
[By CARB on Behalf of the People of the State of California Against All Defendants]

101.   Plaintiff incorporates and realleges paragraphs 1 through 100, inclusive, as if set forth here in full.

102.   Under the CAA, California is uniquely authorized to seek a waiver of preemption to adopt and enforce its own air pollution standards. 42 U.S.C. § 7543(b).

103.   Pursuant to the CAA, California requested and obtained waivers of preemption from EPA to enforce 13 C.C.R. § 1961, which establishes exhaust emission standards for certain 2004 through 2019 model year vehicles. 68 Fed. Reg. 19811-01 (April 22, 2003); 70 Fed. Reg. 22034-02 (April 28, 2005); 75 Fed. Reg. 44948-01 (July 30, 2010).

104.   Additionally, effective July 18, 2016, EPA approved 13 C.C.R. § 1961 as part of a revision to the California State Implementation Plan ("SIP"). 40 C.F.R. § 52.220a; 81 Fed. Reg. 39424-01.

105.   Pursuant to the CAA, California also requested and obtained waivers of preemption to enforce 13 C.C.R. § 1961.2, which establishes exhaust emission standards for certain 2004 through 2019 model year passenger cars and light-duty trucks.  78 Fed. Reg. 2112-01 (January 19, 2013); 81 Fed. Reg. 39424-01 (June 16, 2016).

106.   Additionally, effective July 18, 2016, EPA approved 13 C.C.R. § 1961.2 as part of a revision to California's SIP.  40 C.F.R. § 52.220a; 81 Fed. Reg. 39424-01.

107.   The Subject Vehicles identified in paragraph 51 above are subject to either the "LEV II" standards for passenger cars and light-duty trucks set forth in 13 C.C.R. § 1961 or the "LEV III" standards for passenger cars and light-duty trucks set forth in 13 C.C.R. § 1961.2, as

29

reflected in the applications for certification submitted by Defendants and the corresponding Executive Orders issued by CARB.

108.    The CAA's citizen suit provision, 42 U.S.C. § 7604(a), provides that "any person may commence a civil action on his own behalf (1) against any person . . . who is alleged to have violated . . . or to be in violation of (A) an emission standard or limitation . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." Plaintiff is considered a "person" for purposes of the citizen suit provision. 42 U.S.C. § 7602(e).

109.    Defendants sold, attempted to sell, or caused to be offered for sale in California Subject Vehicles that failed to comply with either the "LEV II" emissions standards set forth in 13 C.C.R. § 1961 or the "LEV III" emissions standards set forth in 13 C.C.R. § 1961.2, when sold, and those vehicles remain out of compliance with those standards. Because the "LEV II" and "LEV III" standards have been approved as part of California's SIP, Defendants' actions constitute multiple violations of an "emission standard or limitation" within the meaning of 42 U.S.C. § 7604(a)(1).

110.    Plaintiff provided Defendants and EPA with notice of Defendants' violations under the CAA in accordance with 42 U.S.C. § 7604(b) and 40 C.F.R. § 54.3(b).

### SECOND CAUSE OF ACTION
**(Cal. Health & Safety Code § 43151)**
**[By CARB on Behalf of the People of the State of California Against All Defendants]**

111.    Plaintiff incorporates and realleges paragraphs 1 through 100, inclusive, as if set forth here in full.

112.    Before January 1, 2017, California Health and Safety Code § 43151(a) was a strict liability statute, stating: "No person who is a resident of, or who operates an established place of business within, this state shall import, deliver, purchase, rent, lease, acquire, or receive a new motor vehicle, new motor vehicle engine, or motor vehicle with a new motor vehicle engine

30

for use, registration, or resale in this state unless such motor vehicle engine or motor vehicle has been certified pursuant to this chapter. No person shall attempt or assist in any such action."[6]

113.     Defendants operated through December 31, 2016 (and continues to operate) several established places of business in California, including a California Business Center in Long Beach, California, a California Vehicle Preparation Center in Long Beach, California and a Parts Distribution Center in Fontana, California.

114.     Before January 1, 2017, Defendants imported, delivered, purchased, rented, leased, acquired, and/or received new Subject Vehicles identified in paragraph 51 for intended use, registration, or resale in California, and/or attempted or assisted in such actions.  The Subject Vehicles, as manufactured, are not certified in compliance with California law because they do not conform in all material respects to the design specifications described in the applications for certification that purportedly cover them, including that they (a) contain AECDs that were not disclosed in the applications, (b) contain defeat devices, and/or (c) contain undisclosed or unapproved on-board diagnostic non-compliances, or on-board diagnostic non-compliances for which CARB granted deficiencies at the time of certification based on false, incomplete, or misleading information submitted by Defendants.  Further, Defendants did not test the appropriate durability data vehicle, durability demonstration vehicle, and/or the appropriate emissions data vehicle, and the vehicles that were tested by Defendants were tested in a manner not representative of normal in-use driving.

115.     Defendants' actions before January 1, 2017 constitute multiple violations of California Health and Safety Code § 43151.

116.     As of January 1, 2017, California Health and Safety Code § 43151(a) is a strict liability statute that states: "A person shall not offer for sale, introduce into commerce, import, deliver, purchase, rent, lease, acquire, or receive a new motor vehicle, new motor vehicle engine, or motor vehicle with a new motor vehicle engine for use, registration, or resale in this state

---

[6] As reflected in this Cause of Action, the text of California Health and Safety Code § 43151 was amended with an effective date of January 1, 2017. See 2016 Cal. Legis. Serv. Ch. 604 (A.B. 1685, "AIR POLLUTION—MOTOR VEHICLES—FINES AND PENALTIES").

1   unless the motor vehicle engine or motor vehicle has been certified pursuant to this chapter. A

2   person shall not attempt or assist in any such action."

3        117.    On or after January 1, 2017, Defendants offered for sale, introduced into

4   commerce, imported, delivered, purchased, rented, leased, acquired, and/or received new Subject

5   Vehicles identified in paragraph 51 for intended use, registration, or resale in California, and/or

6   attempted or assisted in such actions. The Subject Vehicles, as manufactured, are not certified in

7   compliance with California law because they do not conform in all material respects to the design

8   specifications described in the applications for certification that purportedly cover them,

9   including that they (a) contain AECDs that were not disclosed in the applications, (b) contain

10  defeat devices, and/or (c) contain undisclosed or unapproved on-board diagnostic non-

11  compliances, or on-board diagnostic non-compliances for which CARB granted deficiencies at

12  the time of certification based on false, incomplete, or misleading information submitted by

13  Defendants. Further, Defendants did not test the appropriate durability data vehicle, durability

14  demonstration vehicle, and/or the appropriate emissions data vehicle, and the vehicles that were

15  tested by Defendants were tested in a manner not representative of normal in-use driving.

16       118.    Defendants' actions, either directly or by assisting the other Defendants,

17  constitute multiple violations of California Health and Safety Code § 43151 on or after January 1,

18  2017.

19

20  

**THIRD CAUSE OF ACTION**
**(Cal. Health & Safety Code § 43152)**
**[By CARB on Behalf of the People of the State of California**
**Against All Defendants]**

21

22       119.    Plaintiff incorporates and realleges paragraphs 1 through 100, inclusive, as if set

23  forth here in full.

24       120.    California Health and Safety Code § 43152 provides that no person engaged in

25  the business of selling to an ultimate purchaser or renting or leasing new motor vehicles,

26  including manufacturers, distributors, and dealers, shall intentionally or negligently import,

27  deliver, purchase, receive, or otherwise acquire new motor vehicles intended for use primarily in

28

32

California for sale or resale to an ultimate purchaser who is a resident of or doing business in California, or for registration, leasing, or rental in California, which has not been certified pursuant to this chapter; and no person shall attempt or assist in any such action.

121.    Defendants engaged, as manufacturers or distributors, in the business of selling to an ultimate purchaser or leasing new motor vehicles and intentionally or negligently importing and/or delivering the new Subject Vehicles identified in paragraph 51 above that were intended for use primarily in California for sale or resale to an ultimate purchaser who is a resident of or doing business in California, or for registration, leasing, or rental in California, and/or attempted or assisted in such actions.

122.    The Subject Vehicles, as manufactured, are not certified in compliance with California law because they do not conform in all material respects to the design specifications described in the applications for certification that purportedly cover them, in that they, among other things, (a) contain AECDs that were not disclosed in the applications, (b) contain defeat devices, and/or (c) contain undisclosed or unapproved on-board diagnostic non-compliances, or on-board diagnostic non-compliances for which CARB granted deficiencies at the time of certification based on false, incomplete, or misleading information submitted by Defendants. Further, Defendants did not test the appropriate durability data vehicle, durability demonstration vehicle, and/or the appropriate emissions data vehicle, and the vehicles that were tested by Defendants were tested in a manner not representative of normal in-use driving.

123.    Defendants' actions, either directly or by assisting the other Defendants, constitute multiple violations of California Health and Safety Code § 43152.

///
///
///
///
///
///

33

**FOURTH CAUSE OF ACTION**
**(Cal. Health & Safety Code § 43153)**
**[By CARB on Behalf of the People of the State of California**
**Against All Defendants]**

124.    Plaintiff incorporates and realleges paragraphs 1 through 100, inclusive, as if set forth here in full.

125.    California Health and Safety Code § 43153 provides that no person engaged in the business of selling to an ultimate purchaser or renting or leasing new motor vehicles, including manufacturers, distributors, and dealers, shall intentionally or negligently sell, or offer to sell, to an ultimate purchaser who is a resident of or doing business in California, or lease, rent, or offer to rent in California, any new motor vehicle which is intended primarily for use or for registration in California and has not been certified pursuant to this chapter; and no person shall attempt or assist in any such action.

126.    Defendants engaged, as manufacturers or distributors, in the business of selling to an ultimate purchaser or leasing the new motor vehicles and intentionally or negligently selling, or offering to sell, to an ultimate purchaser who is a resident of or doing business in California, or leasing, offering to lease, in California the new Subject Vehicles identified in paragraph 51 above, which are not certified in compliance with California requirements, and that were intended primarily for use or for registration in California, and/or attempted or assisted in such actions.

127.    The new subject motor vehicles are not certified in compliance with California requirements, because, as manufactured, they do not conform in all material respects to the design specifications described in the applications for certification that purportedly cover them, in that they, among other things, (a) contain AECDs that were not disclosed in the application, (b) contain defeat devices, and/or (c) contain undisclosed or unapproved on-board diagnostic non-compliances, or on-board diagnostic non-compliances for which CARB granted deficiencies at the time of certification based on false, incomplete, or misleading information submitted by Defendants. Further, Defendants did not test the appropriate durability data vehicle, durability demonstration vehicle, and/or the appropriate emissions data vehicle, and the vehicles that were tested by Defendants were tested in a manner not representative of normal in-use driving.

34

128.     Defendants' actions, either directly or by assisting the other Defendants, constitute multiple violations of California Health and Safety Code § 43153.

**FIFTH CAUSE OF ACTION**
**(Cal. Health & Safety Code § 43211; 13 C.C.R. §§ 1961, 1961.2 [Sale of Motor Vehicles that Fail to Meet Applicable Emission Standards])**
**[By CARB on Behalf of the People of the State of California Against All Defendants]**

129.     Plaintiff incorporates and realleges paragraphs 1 through 100, inclusive, as if set forth here in full.

130.     California Health and Safety Code § 43211 is a strict liability statute which states that any manufacturer who sells, attempts to sell, or causes to be offered for sale in California a new motor vehicle that fails to meet the applicable emission standards shall be subject to a civil penalty for each such action.[7]

131.     13 C.C.R. § 1961 sets forth specific "LEV II" exhaust emission standards for 2004 through 2019 model year passenger cars and light-duty trucks and 13 C.C.R. § 1961.2 sets forth specific "LEV III" exhaust emission standards for 2004 through 2019 model year passenger cars and light-duty trucks.  The Subject Vehicles identified in paragraph 51 above are subject to either the "LEV II" or "LEV III" exhaust emission standards.

132.     Defendants have sold, attempted to sell, or caused to be offered for sale in California approximately 36,946 Subject Vehicles that fail to meet the applicable emission standards.

133.     Defendants' actions constitute multiple violations of California Health and Safety Code § 43211.

///

///

///

---

[7] Section 43211 was amended, effective January 1, 2017, to increase the penalty from $5,000 for each such action to up to $37,500 for each such action. See 2016 Cal. Legis. Serv. Ch. 604 (A.B. 1685, "AIR POLLUTION—MOTOR VEHICLES—FINES AND PENALTIES").

1

2

3

**SIXTH CAUSE OF ACTION**
**(Cal. Health & Safety Code § 43212; 13 C.C.R. §§ 1961, 1961.2**
**[Failure to Comply with Applicable Test Procedures])**
**[By CARB on Behalf of the People of the State of California**
**Against All Defendants]**

4

5

134.    Plaintiff incorporates and realleges paragraphs 1 through 100, inclusive, as if set forth here in full.

6

7

8

9

135.    California Health and Safety Code § 43212 is a strict liability statute which states, in relevant part, that a manufacturer or distributor who does not comply with the test procedures adopted by CARB shall be subject to a civil penalty for each vehicle that does not comply with the test procedures and which is first sold in California.[8]

10

11

136.    13 C.C.R. § 1961 sets forth the test procedures for determining compliance with emission standards for the Model Year 2009, 2010, 2011, 2012, 2013 and 2014 Subject Vehicles.

12

13

137.    13 C.C.R. § 1961.2 sets forth the test procedures for determining compliance with emission standards for Model Year 2015 and 2016 Subject Vehicles.

14

15

16

17

18

19

20

21

22

138.    Among other things, the test procedures require manufacturers to conduct one durability demonstration for each durability group (40 C.F.R. § 86.1823-08).  The configuration of the durability data vehicle is determined according to the provisions of 40 C.F.R. § 86.1822–01 (40 C.F.R. § 86.1829-01(a)). Section 86.1822-01 requires the manufacturer to select the durability data vehicle configuration that is expected to generate the highest level of exhaust emission deterioration as the durability data vehicle for each durability group.  Because of the presence of undisclosed AECDs and/or defeat devices, the durability data vehicles selected by Defendants were not the vehicle configurations expected to generate the highest level of exhaust emission deterioration.

23

24

25

139.    The test procedures also require manufacturers to conduct exhaust emissions testing on emissions data vehicles for each test group (40 C.F.R. § 86.1829-15(b)).  Within each test group, the manufacturer must select the emissions data vehicle configuration that is expected

26

27

28

_____

[8] Section 43212 was amended, effective January 1, 2017, to increase the penalty from $50 per vehicle to up to $37,500 per vehicle. See 2016 Cal. Legis. Serv. Ch. 604 (A.B. 1685, "AIR POLLUTION—MOTOR VEHICLES—FINES AND PENALTIES").

36

1   to be worst-case for exhaust emission compliance on candidate in-use vehicles (40 C.F.R. §

2   86.1828-01(a)).  Because of the presence of undisclosed AECDs and/or defeat devices, the

3   emissions data vehicles selected by Defendants were not the vehicle configurations expected to be

4   worst-case for exhaust emissions compliance on candidate in-use vehicles.

5         140.     Defendants' actions failed to comply with CARB's test procedure regulations and

6   constitute multiple violations of California Health & Safety Code § 43212.

7
                                 **SEVENTH CAUSE OF ACTION**

8               **(Cal. Health & Safety Code § 43016; 13 C.C.R. § 1968.2**

9        **[Violation of Malfunction and Diagnostic System Requirements])**
     **[By CARB on Behalf of the People of the State of California**

10                      **Against All Defendants]**

11        141.     Plaintiff incorporates and realleges paragraphs 1 through 100, inclusive, as if set

12  forth here in full.

13        142.     California law specifies on-board diagnostic system requirements for vehicles

14  certified for sale in California.  Specifically, 13 C.C.R. § 1968.2 (Malfunction and Diagnostic

15  System Requirements) requires that model year 2004 and subsequent model year passenger cars,

16  light-duty trucks, and medium-duty vehicles and engines certified for sale in California be

17  equipped with on-board diagnostic systems, and states that the on-board diagnostic systems shall

18  monitor emissions systems in-use for the actual life of the vehicle, and shall be capable of

19  detecting malfunctions of those emissions systems and illuminating a malfunction indicator light

20  to notify the vehicle operator if and when emissions exceed certain designated levels.

21        143.     Defendants violated 13 C.C.R. § 1968.2 with regard to the Subject Vehicles

22  identified in paragraph 51 above because the on-board diagnostic systems installed in those

23  vehicles did not effectively monitor the emissions systems.  Due to the operation of the

24  undisclosed AECDs and/or defeat devices, the on-board diagnostic systems in those vehicles were

25  not capable of detecting and notifying the vehicle operators if and when emissions exceeded the

26  designated levels as demonstrated on the emission test cycles Defendants submitted in their on-

27  board diagnostic certification applications.  Additionally, the Subject Vehicles contain

28  undisclosed or unapproved on-board diagnostic non-compliances, or on-board diagnostic non-

compliances for which CARB granted deficiencies at the time of certification based on false, incomplete, or misleading information submitted by Defendants.

144.    California Health and Safety Code § 43016 is a strict liability statute which provides that any person who violates any provision of Division 26, Part 5 (Cal. Health & Safety Code §§ 43000-44299.91, Vehicular Air Pollution Control), or any order, rule, or regulation of CARB adopted pursuant to Part 5, and for which violation there is not provided in Part 5 any other specific civil penalty or fine, shall be subject to a civil penalty.[9] California Health and Safety Code § 43016 applies to any violation of Division 26, Part 5 (Cal. Health & Safety Code §§ 43000-44299.91, Vehicular Air Pollution Control), and any violation of any order, rule, or regulation of CARB adopted pursuant to Part 5.

145.    Defendants' actions violated 13 C.C.R. § 1968.2 and constitute multiple violations of California Health and Safety Code § 43016.

### EIGHTH CAUSE OF ACTION
#### (Cal. Health & Safety Code § 43016; 13 C.C.R. § 1965
[Violation of Emission Control and Smog Label Requirements])
[By CARB on Behalf of the People of the State of California
Against All Defendants]

146.    Plaintiff incorporates and realleges paragraphs 1 through 100, inclusive, as if set forth here in full.

147.    California law requires certain emission control labels as part of the California certification procedures. For model year 2001 through model year 2014 vehicles, 13 C.C.R. § 1965 requires emission control labels as specified in the 2001-2014 Test Procedures. The 2001-2014 Test Procedures require a statement indicating that the vehicle conforms to applicable California regulations. For model year 2015 and 2016 vehicles, 13 C.C.R. § 1965 requires emission control labels as specified in the 2015 Test Procedures and Subsequent Model Years. The 2015 Test Procedures require a statement indicating that the vehicle conforms to applicable

---

[9] California Health and Safety Code § 43016 was amended, effective January 1, 2017, to increase the penalty from a maximum of $500 per vehicle to a maximum of $37,500 for each such action. See 2016 Cal. Legis. Serv. Ch. 604 (A.B. 1685, "AIR POLLUTION—MOTOR VEHICLES—FINES AND PENALTIES").

38

California regulations. However, placement of such a statement on vehicles which, in fact, do not comply with all applicable California regulations, is prohibited.

148.    Defendants placed a statement on each of the Subject Vehicles representing that the vehicle conforms to applicable California regulations, but the Subject Vehicles did not in fact conform to the regulations as described in this Complaint.

149.    California's emissions labeling requirements set out in 13 C.C.R. § 1965 also require that all certified new passenger cars must bear a label reflecting the "smog index."  For model year 2009 through 2016 vehicles, 13 C.C.R. § 1965 requires smog index labeling to conform with the requirements in the "California Environmental Performance Label Specifications for 2009 and Subsequent Model Year Passenger Cars, Light-Duty Trucks, and Medium-Duty Passenger Vehicles" ("2009 Smog Label Specifications").  The 2009 Smog Label Specifications prohibit the sale of any model year 2009 and subsequent model year vehicles with an incorrect smog index label.

150.    Defendants reported smog indices or smog scores for the Subject Vehicles that did not accurately reflect the level of emissions of smog-forming pollutants from those vehicles. Instead, the operation of the undisclosed AECDs and/or defeat devices resulted in emissions in excess of the levels associated with the reported smog indices or smog scores.

151.    California Health and Safety Code § 43016 is a strict liability statute which provides that any person who violates any provision of Division 26, Part 5 (Cal. Health & Safety Code §§ 43000-44299.91, Vehicular Air Pollution Control), or any order, rule, or regulation of CARB adopted pursuant to Part 5, and for which violation there is not provided in Part 5 any other specific civil penalty or fine, shall be subject to a civil penalty.  Part 5 does not specify a civil penalty or fine for violations of the labeling requirements set forth in California Health and Safety Code § 43205 and 13 C.C.R. § 1965.

152.    Defendants' actions violated 13 C.C.R. § 1965 and constitute multiple violations of California Health and Safety Code § 43016.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NINTH CAUSE OF ACTION**
**(Cal. Health & Safety Code §§ 43016, 43205; 13 C.C.R. § 2037**
**[Warranty Requirements])**
**[By CARB on Behalf of the People of the State of California**
**Against All Defendants]**

153.     Plaintiff incorporates and realleges paragraphs 1 through 100, inclusive, as if set forth here in full.

154.     California Health and Safety Code § 43205 provides that the manufacturer of each light-duty and medium-duty motor vehicle and motor vehicle engine shall warrant to the ultimate purchaser and each subsequent purchaser that the motor vehicle or motor vehicle engine meets specified requirements, including that it is (a) designed, built, and equipped so as to conform with the applicable emissions standards; (b) that they are free from defects that cause the vehicle or engine to fail to conform to applicable requirements; and (c) that they are free from defects in certain emission-related parts.  Under 13 C.C.R. § 2037, manufacturers must make certain warranty statements, including that the engines it manufactures are designed, built, and equipped so as to conform with all applicable regulations adopted by CARB; and that the engines are free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification.

155.     Contrary to the required warranties, the Subject Vehicles manufactured by Defendants and identified in paragraph 51 (a) contain AECDs that were not disclosed in the application, (b) contain defeat devices, and/or (c) contain undisclosed or unapproved on-board diagnostic non-compliances, or on-board diagnostic non-compliances for which CARB granted deficiencies at the time of certification based on false, incomplete, or misleading information submitted by Defendants.  Further, Defendants did not test the appropriate durability data vehicle, durability demonstration vehicle, and/or the appropriate emissions data vehicle, and the vehicles that were tested by Defendants were tested in a manner not representative of normal in-use driving.

40

COMPLAINT – CALIFORNIA v. DAIMLER AG, ET AL.

156.    For each Subject Vehicle that was ultimately sold to a dealer or ultimately to a purchaser in California, Defendants' actions constitute a violation of California Health and Safety Code § 43205 and 13 C.C.R. § 2037.

157.    California Health and Safety Code § 43016 provides that any person who violates any provision of Division 26, Part 5 (Cal. Health & Safety Code §§ 43000-44299.91, Vehicular Air Pollution Control), or any order, rule, or regulation of CARB adopted pursuant to Part 5, and for which violation there is not provided in Part 5 any other specific civil penalty or fine, shall be subject to a civil penalty. Part 5 does not specify a civil penalty or fine for violations of the requirements set forth in California Health and Safety Code § 43205 and 13 C.C.R. § 2037.

**TENTH CAUSE OF ACTION**
**(Cal. Health & Safety Code § 43106; 13 C.C.R. §§ 1961, 1961.2)**
**[Failure to Report Running Changes])**
**[By CARB on Behalf of the People of the State of California**
**Against All Defendants]**

158.    Plaintiff incorporates and realleges paragraphs 1 through 100, inclusive, as if set forth here in full.

159.    California Health & Safety Code § 43106 generally requires that each new motor vehicle required to meet emission standards adopted by CARB pursuant to California Health & Safety Code § 43101 shall be, in all material respects, substantially the same in construction as the test motor vehicle which was certified by CARB, and provides that a manufacturer may make changes with respect to previously-certified motor vehicles only if such changes do not increase emissions above the applicable standards and are "made in accordance with procedures specified by [CARB]."

160.    The 2001-2014 Test Procedures and 2015 Test Procedures, as defined above and incorporated into 13 C.C.R. §§ 1961 and 1961.2, respectively, set forth the procedures specified by CARB for changes with respect to previously certified motor vehicles.

161.    Specifically, the 2001-2014 Test Procedures and 2015 Test Procedures incorporate by reference 40 C.F.R. § 86.1842-01, which requires that a manufacturer notify the Administrator, defined as the Executive Officer of CARB for purposes of the Test Procedures,

41

"concurrently with (or in advance of) any change or addition in production vehicles which creates a new vehicle configuration within the car lines covered in a certified test group, giving a full description of the change." Under 40 C.F.R. § 86.1842-01, such a change is referred to as a "running change." The 2001-2014 Test Procedures and 2015 Test Procedures further provide that, within thirty days after a manufacturer proposes any such running change, the Executive Officer may request additional information from the manufacturer or deny the proposed change.

162. Defendants made running changes to certain Subject Vehicles, which were not reported to CARB concurrently with or in advance of those changes. For example, Defendants implemented running changes to certain model year 2014 and 2015 Subject Vehicles to resolve a permanent fault code logging issue, without notifying CARB concurrently or in advance of those changes.

163. Defendants' actions in implementing running changes with respect to previously certified motor vehicles without notifying CARB of those changes violated the applicable test procedures as incorporated in 13 C.C.R. §§ 1961 and 1961.2, and constitute multiple violations of California Health & Safety Code § 43106.

**ELEVENTH CAUSE OF ACTION**
**(Cal. Business & Professions Code § 17200**
**[Unlawful Business Practices])**
**[By the California Attorney General on Behalf of the**
**People of the State of California Against All Defendants]**

164. Plaintiff incorporates and realleges paragraphs 1 through 100, inclusive, as if set forth here in full.

165. As set forth in California's Unfair Competition Law, California Business and Professions Code § 17200 provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [California Business and Professions Code §§ 17500-17606]."

42

166.    Defendants have engaged, and continue to engage, in unlawful acts and practices that constitute unfair competition within the meaning of California Business and Professions Code § 17200. Defendants' acts and practices in violation of California Business and Professions Code § 17200 consist of the following:

a.      Defendants' actions constitute multiple violations of 42 U.S.C. § 7604(a)(1), as alleged in the First Cause of Action in paragraphs 101 through 110, which allegations are incorporated herein as if set forth in full.

b.      Defendants' actions constitute multiple violations of California Health and Safety Code § 43151 as alleged in the Second Cause of Action in paragraphs 111 through 118, which allegations are incorporated herein as if set forth in full.

c.      Defendants' actions constitute multiple violations of California Health and Safety Code § 43152 as alleged in the Third Cause of Action in paragraphs 119 through 123, which allegations are incorporated herein as if set forth in full.

d.      Defendants' actions constitute multiple violations of California Health and Safety Code § 43153 as alleged in the Fourth Cause of Action in paragraphs 124 through 128, which allegations are incorporated herein as if set forth in full.

e.      Defendants' actions constitute multiple violations of California Health and Safety Code § 43211 and the requirements in 13 C.C.R. §§ 1961 and 1961.2 as alleged in the Fifth Cause of Action in paragraphs 129 through 133, which allegations are incorporated herein as if set forth in full.

f.      Defendants' actions constitute multiple violations of California Health and Safety Code § 43212 and the requirements in 13 C.C.R. §§ 1961 and 1961.2 as alleged in the Sixth Cause of Action in paragraphs 134 through 140, which allegations are incorporated herein as if set forth in full.

g.      Defendants' actions constitute multiple violations of California Health and Safety Code § 43016 and the requirements in 13 C.C.R. § 1968.2 as alleged in the Seventh Cause of

43

Action in paragraphs 141 through 145, which allegations are incorporated herein as if set forth in full.

h.      Defendants' actions constitute multiple violations of California Health and Safety Code § 43016 and the requirements in 13 C.C.R. § 1965 as alleged in the Eighth Cause of Action in paragraphs 146 through 152, which allegations are incorporated herein as if set forth in full.

i.      Defendants' actions constitute multiple violations of California Health and Safety Code §§ 43016 and 43205 and the requirements in 13 C.C.R. § 2037 as alleged in the Ninth Cause of Action in paragraphs 153 through 157, which allegations are incorporated herein as if set forth in full.

j.      Defendants' actions constitute multiple violations of California Health and Safety Code § 43106 and the requirements in 13 C.C.R. §§ 1961 and 1961.2 as alleged in the Tenth Cause of Action in paragraphs 158 through 163, which allegations are incorporated herein as if set forth in full.

## PRAYER FOR RELIEF

WHEREFORE, the People request that the Court enter a judgment against Defendants as follows:

1.      Pursuant to the CAA, that Defendants be enjoined from violations of the California State Implementation Plan as alleged in this Complaint related to the applicable emissions standards set forth in 13 C.C.R. § 1961 and 13 C.C.R. § 1961.2.

2.      Pursuant to the CAA, that Defendants take appropriate steps to remedy and prevent violations of the California State Implementation Plan as alleged in this Complaint, including, but not limited to, mitigation of excess NOx emissions from the Subject Vehicles.

3.      Pursuant to California Health and Safety Code § 43017, that Defendants be enjoined from further violations of the California Health and Safety Code and CARB regulations relating to vehicular air pollution control as alleged in this Complaint, in particular from further importing or delivering new motor vehicles for sale, lease, or rental in California which were not validly certified by CARB, and further selling or offering to sell, leasing or offering to lease, or

44

renting or offering to rent in California, new motor vehicles which have not been validly certified by CARB.

4.    Pursuant to California Health and Safety Code § 43017, that Defendants take appropriate steps to remedy and prevent violations of the California Health and Safety Code and CARB regulations relating to vehicular air pollution control as alleged in this Complaint, including, but not limited to, mitigation of excess NOx emissions from the Subject Vehicles.

5.    Pursuant to California Health and Safety Code § 43154, for violations occurring before January 1, 2017, that the Court assess civil penalties of up to $5,000 per affected vehicle against Defendants for each violation of California Health and Safety Code §§ 43151, 43152, and 43153.[10]

6.    Pursuant to California Health and Safety Code § 43154, for violations occurring on or after January 1, 2017, that the Court assess civil penalties of up to $37,500 per action for each violation of California Health and Safety Code §§ 43151, 43152, and 43153.

7.    Pursuant to California Health and Safety Code § 43211, for violations occurring before January 1, 2017, that the Court assess the mandatory civil penalty of $5,000 against Defendants for each sale of, offer to sell, action which caused an offer to sell, or attempt to sell an affected vehicle that does not comply with the applicable emissions standards in 13 C.C.R. § 1961.

8.    Pursuant to California Health and Safety Code § 43211, for violations occurring on or after January 1, 2017, that the Court assess a civil penalty of up to $37,500 against Defendants for each sale of, offer to sell, action which caused an offer to sell, or attempt to sell an affected vehicle that does not comply with the applicable emissions standards in 13 C.C.R. § 1961.

---

[10] Section 43154, which authorizes civil penalties for violations of these statutes, was amended, effective January 1, 2017, to increase the penalty from up to $5,000 per vehicle to up to $37,500 per action. See 2016 Cal. Legis. Serv. Ch. 604 (A.B. 1685, "AIR POLLUTION—MOTOR VEHICLES—FINES AND PENALTIES").

45

9.      Pursuant to California Health and Safety Code § 43212, for violations occurring before January 1, 2017, that the Court assess civil penalties of $50 against Defendants for each affected vehicle for each failure to comply with the applicable test procedures, including those test procedures incorporated by reference, in 13 C.C.R. §§ 1961 and 1961.2.

10.     Pursuant to California Health and Safety Code § 43212, for violations occurring on or after January 1, 2017, that the Court assess civil penalties of up to $37,500 against Defendants for each affected vehicle for each failure to comply with the applicable test procedures, including those test procedures incorporated by reference, in 13 C.C.R. §§ 1961 and 1961.2.

11.     Pursuant to California Health and Safety Code § 43016, for violations before January 1, 2017, that the Court assess a civil penalty of up to $500 per affected vehicle against Defendants for each violation of 13 C.C.R. § 1968.2.

12.     Pursuant to California Health and Safety Code § 43016, for violations on or after January 1, 2017, that the Court assess a civil penalty of up to $37,500 per action against Defendants for each violation of 13 C.C.R. § 1968.2.

13.     Pursuant to California Health and Safety Code § 43016, for violations before January 1, 2017, that the Court assess a civil penalty of up to $500 per affected vehicle against Defendants for each violation of 13 C.C.R. § 1965.

14.     Pursuant to California Health and Safety Code § 43016, for violations on or after January 1, 2017, that the Court assess a civil penalty of up to $37,500 per action against Defendants for each violation of 13 C.C.R. § 1965.

15.     Pursuant to California Health and Safety Code § 43016, for violations occurring before January 1, 2017, that the Court assess a civil penalty of up to $500 per affected vehicle against Defendants for each violation of California Health and Safety Code § 43205 and 13 C.C.R. § 2037.

16.     Pursuant to California Health and Safety Code § 43016, for violations occurring on or after January 1, 2017, that the Court assess a civil penalty of up to $37,500 per action

46

Case 1:20-cv-02565   Document 1   Filed 09/14/20   Page 47 of 48

against Defendants for each violation of California Health and Safety Code § 43205 and 13 C.C.R. § 2037.

17.   Pursuant to California Health and Safety Code § 43016, for violations occurring before January 1, 2017, that the Court assess a civil penalty of up to $500 per affected vehicle against Defendants for each violation of California Health and Safety Code § 43106.

18.   Pursuant to California Health and Safety Code § 43016, for violations occurring on or after January 1, 2017, that the Court assess a civil penalty of up to $37,500 per action against Defendants for each violation of California Health and Safety Code § 43106.

19.   Pursuant to California Business and Professions Code § 17203, that Defendants, along with Defendants' successors, agents, representatives, employees, and all persons who act in concert with Defendants, be permanently enjoined from the unlawful business acts or practices alleged herein that violate California Business and Professions Code § 17200.

20.   Pursuant to California Business and Professions Code § 17206, that the Court assess a civil penalty of $2,500 against Defendants for each violation of California Business and Professions Code § 17200, as proved at trial.

21.   Pursuant to California Code of Civil Procedure § 1021.8(a), that the Court award the California Attorney General "all costs of investigating and prosecuting the action, including expert fees, reasonable attorney's fees, and costs" for enforcement of California Health and Safety Code §§ 43016, 43017, and 43154.

22.   Pursuant to 42 U.S.C. § 7604(d), that the Court award Plaintiff its costs of litigation, including reasonable attorney and expert witness fees.

23.   That Plaintiff recover its costs of suit, including costs of investigation.

24.   For such other and further relief as the Court deems just and proper.

47

COMPLAINT – CALIFORNIA v. DAIMLER AG, ET AL.

1

2   Dated: September 14, 2020                    Respectfully Submitted,

3
                                                 XAVIER BECERRA
4                                                Attorney General of California
                                                 ROBERT BYRNE
5                                                ED OCHOA
                                                 Senior Assistant Attorneys General
6                                                GARY E. TAVETIAN
                                                 Supervising Deputy Attorney General
7
                                                 /s/ Joshua M. Caplan
8
                                                 JOSHUA M. CAPLAN
9                                                JOHN SASAKI
                                                 Deputy Attorneys General
10                                               Attorneys for the People of the State of
                                                 California ex rel. the California Air Resources
11                                               Board

12                                               /s/ David Zonana

13                                               DAVID A. ZONANA
                                                 Supervising Deputy Attorney General
14                                               JOSHUA R. PURTLE
                                                 Deputy Attorney General
15                                               Attorneys for the People of the State of
                                                 California ex rel. Xavier Becerra, Attorney
16                                               General of the State of California

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT – CALIFORNIA v. DAIMLER AG, ET AL.